

### COMMONWEALTH OF KENTUCKY
### JEFFERSON COUNTY CIRCUIT COURT
### CIVIL ACTION NO.: _____

**SURBAN WARD**                                                  **PLAINTIFF**
**5310 PLANK DRIVE APT. 204**
**LOUISVILLE, KY 40219**

**v.**

**MONRO, INC.**                                                  **DEFENDANTS**
**200 HOLLEDER PARKWAY**
**ROCHESTER, NY 14615**

# JURY FEE PAID

> **Registered Agent:**
> **CT CORPORATION SYSTEM**
> **306 W MAIN STREET SUITE 512**
> **FRANKFORT, KY 40601**

### <u>VERIFIED COMPLAINT</u>

Comes now the Plaintiff, Surban Ward ("Mr. Ward" or "Plaintiff"), by and through

counsel, and for his Complaint against Monro, Inc. ("Monro"), states as follows:

### <u>JURISDICTION AND VENUE</u>

1. Plaintiff, Mr. Ward, is a resident of Louisville, Kentucky and as such, is a resident of

    Jefferson County, Kentucky.

2. Defendant, Monro, is incorporated in Kentucky, with its principal place of business in

    Rochester, New York, and as such is either a resident of Kentucky or New York.

3. Monro submits itself to the jurisdiction of this Court under <u>KRS 454.210</u>, by transacting

    any business in the Commonwealth. Specifically, Monro operates a facility in Louisville,

    Kentucky.

4. Mr. Ward's cause of action arises out of events that took place in Louisville, Kentucky.

1

<span style="writing-mode: vertical-lr;">Presiding Judge: HON. OLU A. STEVENS (630305)</span>

<span style="color:red;">EXHIBIT A</span>

5. Mr. Ward's damages exceed the threshold requirement of five-thousand dollars ($5,000) and, therefore, this Court has proper jurisdiction over the matter.

6. Plaintiff's causes of actions arise under the Kentucky Civil Rights Act, as codified in KRS Chapter 344. As such, pursuant to KRS § 344.450 this action must be and is being brought in the Circuit Court in the county in which the alleged action arose.

## FACTUAL ALLEGATIONS

1. Mr. Ward began employment with "Tires Now," a subsidiary company of Defendant, on November 17, 2017 as an Order Picker for tires.

2. On or about March 2018, Dewayne Liddell ("Mr. Liddell"), Supervisor, called Mr. Ward and other Black colleagues "monkeys" in front of the General Manager Shaun Helvy ("Mr. Helvy").

3. Mr. Liddell and Mr. Helvy are both Caucasian.

4. Mr. Helvy downplayed the racial comment, by saying, in reference to Mr. Liddell, that "He didn't mean it."

5. Mr. Liddell was Mr. Ward's supervisor and Mr. Helvy was the General Manager above Mr. Liddell.

6. Mr. Ward asked Mr. Helvy to address the situation with any kind of remedy and Mr. Helvy promised that he would speak with other management and handle it.

7. Mr. Liddell never apologized and no discipline was handed down by Monro.

8. On or about April of 2019, Vincent Barber ("Mr. Barber") and Mr. Liddell get into a heated argument while operating forklifts. Mr. Ward was a witness to this event.

9. Mr. Barber is Black.

10. Mr. Ward wrote a witness statement of what he witnessed.

2

11. Mr. Ward detailed that Mr. Barber never used a curse word, but eventually yelled back at Mr. Liddell in "frustration."

12. Mr. Ward wrote that Mr. Liddell is the cause of "90% of most issues in the warehouse" and referenced the morning when Mr. Liddell called Mr. Ward and other black employees "monkeys."

13. Even though Mr. Ward stated that Mr. Liddell was the instigator of the incident, Mr. Barber was fired along with Mr. Liddell and Mr. Helvy.

14. Brian Osborne ("Mr. Osborne") replaced Mr. Helvy as General Manager.

15. Mr. Osborne hired friends for jobs which should have been properly advertised to all warehouse employees.

16. Mr. Ward first reported his concerns of unfair hiring practices and pay discrimination to the EEOC in July of 2019.

17. Mr. Ward made another report to the EEOC in 2020.

18. On August 12, 2020, Steve, another Picker, was advised by Mr. Ward to go about picking the order a different way, as Mr. Ward and Steve believed it to be more efficient.

19. Mr. Ward continued carrying out his own work duties with no deviation.

20. Steve is White.

21. Mr. Osborne noticed the variation in work and started yelling at Steve.

22. Mr. Ward stepped into the conversation to explain his reasoning that would more efficiently pick the order, but Mr. Osborne was so enraged that he condescendingly referred to Mr. Ward as "boss" and yelled at him "Who is the boss here?"

23. Mr. Osborne then repeatedly invaded Mr. Ward's personal space and put his finger in his face.

3

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000003 of 000020

24. Mr. Ward was extremely disturbed by Mr. Osborne's aggressive and threatening behavior.

25. Later that same day, Mr. Ward brought up the incident to Lynn Jennings ("Ms. Jennings"), Head of HR, but she refused to comment on the situation, while Mr. Osborne yelled "I would do it again."

26. Mr. Osborne apologized to Steve for the outburst.

27. Mr. Ward never received any apology of any kind from Mr. Osborne.

28. No action was taken by Mr. Osborne or Ms. Jennings to resolve this issue.

29. Mr. Ward emailed an employee help inbox at Monro on September 24, 2020, to express his concerns over the ongoing harassment from Mr. Osborne and the escalating incidents, including this one.

30. No response was made.

31. Mr. Osborne warned each new Warehouse Manager, who directly supervised Pickers but was under the General Manager, that Mr. Ward was a troublemaker who "got his co-workers riled up" and was a "union guy."

32. Even though there was no union, Mr. Ward was branded a "union guy" for asserting safety laws and workers' rights when management tried to make the Pickers disobey regulations and policies.

33. Mr. Ward learned of Mr. Osborne's unprofessional comments when, Paul, the Warehouse Manager from February to June of 2021, on or about May 2021 advised Mr. Ward that Mr. Osborne had said these things about him when he was first hired, but that Paul thought that Mr. Ward was a good worker.

34. Mr. Ward was one of only three (3) Black warehouse workers.

4

Presiding Judge: HON. OLU A. STEVENS (630305)

35. On July 27, 2021, Mr. Ward was called into a meeting with Mr. Osborne, Greg Carpenter ("Mr. Carpenter"), a Supervisor in HR, and another representative of HR who attended the meeting virtually.

36. This meeting was to reprimand Mr. Ward for failing to supply a doctor's note to continue his working accommodations.

37. Mr. Ward had these accommodations for the previous year because he suffered a foot condition so he could not stand for long periods of time.

38. Mr. Carpenter reprimanded Mr. Ward for failing to provide a suitable doctor's note, when the company gave Mr. Ward until August 4th to visit the doctor. Mr. Carpenter and Mr. Osborne were prematurely reprimanding him for a deadline that had not even yet passed.

39. Even worse, Mr. Ward had already given the requisite doctor's note to Mr. Osborne on the day he was first told of the task.

40. Mr. Osborne told Mr. Ward that he would not be able to work until they received the doctor's note, even though Mr. Ward had delivered the note on July 21, 2021, the same day he also went to the doctor.

41. The doctor Mr. Ward visited was next door to Mr. Ward's work, so it was convenient and efficient to drop it off the Doctor's note directly after visiting the doctor.

42. Mr. Ward went to the front desk and asked the attendant, Sarah, to make a copy for him, before proceeding to the back office to deliver the note to Mr. Osborne.

43. The note Mr. Ward provided was almost exactly the same as the first note provided, but Mr. Carpenter stated that the doctor must "lay hands" on Mr. Ward and that the note was insufficient, even though Mr. Ward stated that the doctor did examine him. See **Exhibits 1 & 2**

5

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000005 of 000020

44. Mr. Ward argued with Mr. Carpenter that no doctor would sign a note without a thorough examination, and even though Mr. Carpenter had no evidence to the contrary, Mr. Carpenter claimed that the note provided on July 21, 2021 was insufficient.

45. Mr. Ward had received two letters from the HR department of Monro asking him to obtain a new doctor's note.

46. Andrew Mitchell ("Mr. Mitchell"), Area Manager, delivered the second letter to Mr. Ward while he was working.

47. Mr. Ward opened and read the letter, then deposited it in the trash can. Mr. Ward tore the letter into pieces to protect his privacy before throwing it into the trash can.

48. Mr. Mitchell falsely told Mr. Carpenter that Mr. Ward had ripped it up "in his face." Mr. Carpenter reprimanded Mr. Ward for ripping up the letter, claiming that it was an act of insubordination.

49. When Mr. Ward ripped up the letter when Mr. Ward was about fifteen to twenty yards away from Mr. Mitchell, as the only trash can was at the other end of the docks. Mr. Mitchell delivered the letter to Mr. Ward near the other end of the docks.

50. August 4, 2021 Mr. Ward was terminated.

### COUNT I. DISRIMINATION BASED ON RACE

51. Mr. Ward hereby incorporates each and every allegation of paragraphs one (1) through fifty (50), as if fully set forth with particularity herein.

52. Pursuant to **KRS § 344.040**, it is unlawful for an employer to discriminate against any individual because of the individual's race, color, religion, national origin, sex, or age forty (40) and over.

53. Monro is an employer pursuant to **KRS § 344.030**.

6

54. Mr. Ward is an adult African-American male and as such is a member of a protected class.

55. Mr. Ward was qualified for the position that he held, as he had worked there for several years.

56. Mr. Ward was treated differently than similarly situated employees who are white. Mr. Ward was discriminated against based on his race on numerous occasions.

57. Mr. Ward was called a "monkey," an obvious racial slur, by his white supervisor Mr. Liddell in the presence of upper management Mr. Helvy.

58. Mr. Ward was not paid nor promoted as compared to other White colleagues and filed two separate claims with the EEOC.

59. Mr. Ward was treated with hostility by Mr. Osborne and Mr. Mitchell, who gave Mr. Ward negative work performance reviews and reprimanded him for ripping up a paper, when Mr. Ward was protecting his privacy and put the paper in the trash can.

60. These actions taken by Monro were due to Mr. Ward's race, are in violation of KRS § 344 and establish a *prima facie* case of discrimination against Monro.

61. Mr. Ward, having shown that he was treated differently because of his race, to his detriment, has suffered, and will continue to suffer, monetary losses based on Monro's actions.

## **COUNT II. DISCRIMINATION BASED ON DISABILITY**

62. Plaintiff hereby incorporates each and every allegation contained in paragraphs (1) through sixty-one (61) as if fully set forth with particularity therein;

63. KRS § 344.040 states that it is unlawful for an employer to discriminate against an individual because they are a person qualified with a disability.

7

64. Plaintiff was an individual with a disability of foot pain, and he is thus a member of a protected class.

65. Under the American Disability Act, an employer must not discriminate on the basis of a workers' disabilities; the ADA also requires employers to provide reasonable accommodations, including changes to the workplace or job, to allow employees with disabilities to do their jobs proficiently.

66. The adverse actions taken by Defendants were due to Mr. Ward's disability, and are in violation of KRS § 344.040, and establish a *prima facie* case for disability discrimination against the Defendants.

67. Monro was aware of Mr. Ward's disability from June of 2020 and created a Reasonable Accommodation Agreement ("RAA"). **See Exhibit 3.**

68. Monro accepted the first doctor's note, but then insisted that the updated doctor's note was insufficient, even though the second doctor's note was obtained from the same doctor and doctor's office.

69. Monro, Mr. Carpenter, and Mr. Osborne placed extra burdens on Mr. Ward to update his RAA and reprimanded him in the July 30th meeting for supposedly fraudulently obtaining a doctor's note. Specifically, Mr. Carpenter insisted that the doctor must "lay hands" on Mr. Ward when Mr. Ward admitted that the doctor had in fact completed a full examination.

70. Consequently, Mr. Ward was fired.

71. Mr. Ward, having shown that he was treated differently because of his disability, to his detriment, suffered and will continue to suffer monetary losses based on unemployment, humiliation, embarrassment, stress, and loss of income.

8

72. The actions taken by Defendant were due to Mr. Ward's disability, in violation of KRS §
344.040 and establish a *prima facie* case of disability discrimination against Defendant.

## COUNT III. RETALIATION

73. Mr. Ward hereby incorporates each and every allegation of paragraphs one (1) through
seventy-two (72), as if fully set forth with particularity herein.

74. Pursuant to the KCRA, as codified in KRS Chapter 344, it is unlawful for an employer
and its employees, agents, and/or representatives to retaliate against an individual
because she has opposed a practice declared unlawful by KRS Chapter 344.

75. KRS § 344.280 (1) makes it unlawful for an employer or person to retaliate or
discriminate in any manner against a person because she has opposed a practice declared
unlawful by this chapter, or because she has made a charge, filed a complaint, testified,
assisted or participated in any manner in any investigation, proceeding or hearing under
this chapter. A claim for unlawful retaliation requires the plaintiff to first establish a
*prima facie* case of retaliation which consists of showing that: (1) she engaged in an
activity protected by (the KCRA); (2) that exercise of her civil rights was known by the
Defendant; (3) that, thereafter, the Defendant took an employment action adverse to the
Plaintiff; and (4) there was a causal connection between the activity engaged in the
Defendant employer's act. *Brooks v. Lexington-Fayette Urban Cty. Housing Authority*,
132 S.W.3d 790, 803 (Ky. 2004).

76. KRS § 344.030 defines "employer" for the purposes of KRS § 344.280 as "a person who
has eight (8) or more employees within the state in each of twenty (20) or more calendar
weeks" during either the same year as the alleged unlawful discrimination or during the
preceding year. Defendant, Monro is an employer pursuant to this statute.

9

77. KRS § 344.040 protects an employee from discrimination because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker.

78. Mr. Ward is a member of a class protected by KRS § 344 as an African-American man. As such, he was engaged in a protected activity when he filed his disability accommodation and doctor's note with Defendant.

79. Defendant took materially adverse employment actions against Mr. Ward by not promoting nor paying Mr. Ward equally as newer hires, nor treating Mr. Ward fairly.

80. After Mr. Ward complained to the employee help inbox and reported to Ms. Jennings, in the presence of Mr. Osborne, the harassment only increased.

81. Monro never addressed the racial slur used against Mr. Ward by Mr. Liddel, even though Mr. Ward notified the employee inbox Er4u@monro.com and Ms. Jennings.

82. Mr. Osborne called him "Boss" and put his finger in his face and when Mr. Ward again brought this to the attention of Monro, Mr. Osborne stated that he would do it again, and no further actions or steps were taken by Monro.

83. There is a causal connection between Mr. Ward losing his job and filing disability accommodation.

84. Defendants' conduct violates KRS § 344.280, and Defendants should be held liable.

### COUNT IV. PROMISSORY ESTOPPEL

85. Mr. Ward hereby incorporates each and every allegation of paragraphs one (1) through eighty-four (84), as if fully set forth with particularity herein.

86. Under Kentucky law, the elements of promissory estoppel are: (1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the

10

promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." *Res-Care, Inc. v. Omega Healthcare Investors, Inc.*, 187 F.Supp.2d 714, 718 (W.D. Ky. 2001).

87. Defendant policy and management encourages employees to address their concerns with management so that they may be resolved efficiently and quickly.

88. Monro can reasonably expect their own policies to induce action on the part of their employees. Especially when their policies read like a call to action.

89. Mr. Ward was induced into an action when he reported the incident to Ms. Jennings, HR, and Mr. Helvy. Specifically, he was induced into an action with the specific policy of equality and safety.

90. Mr. Ward reported the racial slurs and physical intimidation used by Mr. Osborne to management, but Monro failed to address or remedy the situation at all.

91. Mr. Ward has faced harm as a result of his reliance, and injustice can only be avoided by the enforcement of Defendant's promise.

## COUNT V. HOSTILE WORK ENVIRONMENT

92. Mr. Ward hereby incorporates each and every allegation of paragraphs one (1) through ninety-one (91), as if fully set forth with particularity herein.

93. In Kentucky, to establish a *prima facie* case of hostile work environment, Plaintiff must show that (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment regarding their protected class; (3) the harassment was based on the protected class; (4) the harassment had the effect of unreasonably interfering with his work performance by creating intimidating, hostile, or offensive work environment; and (5) the existence of respondent superior liability.

11

94. Mr. Ward, as an African-American male with a disability, is a member of a protected class.

95. Mr. Ward was subjected to hostility by Mr. Osborne putting his finger aggressively in his face and when Mr. Ward brought this up to another manager, Mr. Osborne faced no consequences and even doubled-down that he would do it again, as Mr. Osborne saw nothing wrong nor unprofessional about how he had conducted himself.

96. Mr. Ward was subjected to unwelcomed harassment on the basis of his race. Similarly situated Caucasian employees were not subjected to the same harassment and antics.

97. Steve, the other White picker, was given an apology by Mr. Osborne, while Mr. Ward never received an apology for Mr. Osborne shaking his finger in his face and speaking so rudely to him, especially in front of other employees.

98. The harassment unreasonable interfered with Mr. Ward's work performance by creating and/or condoning an intimidating, hostile, or offensive work environment.

99. Respondent superior liability theorizes that when one acts through the agency of another, he is himself acting and thus responsible for the acts of his agent. *Brooks v. Grams*, 289 S.W.3d 208, 211 (Ky. Ct. App. 2008). "When an agent fails in any duty which he owes a third party or the public generally, the principal is responsible for the future." *Smith v. Smith*, 333 S.W.2d 503, 504 (Ky. 1960). Under these circumstances, an employer is strictly liable for damages resulting from the tortious acts of his employees. *Patterson v. Blair*, 172 S.W.3d 361, 364 (Ky. 2005).

100. In the current case, both Defendants have acted in a tortious manner. Monro is liable for their own actions and through the theory of respondent superior liability, Monro is liable for Mr. Osborne's actions and Mr. Carpenter's actions.

12

Presiding Judge: HON. OLU A. STEVENS (630305)

COM : 000012 of 000020

## PRAYER FOR RELIEF

Plaintiff, Mr. Ward, hereby incorporates all preceding paragraphs as if fully set forth with particularity herein.

**WHEREFORE**, Mr. Ward, prays this Court:

1. Declare Defendants' conduct is in violation of Mr. Ward's rights;

2. Award Mr. Ward compensatory damages in such amount as shall be proven at trial for his economic, personal and other losses;

3. Award Mr. Ward damages in an amount to be proven at trial for humiliation, embarrassment, apprehension about his future, and emotional stress, which the Defendants caused Mr. Ward by their illegal, discriminatory, and wrongful acts towards him;

4. Award Mr. Ward costs, interest, and attorneys' fees pursuant to KRS § 344; and

5. Grant him such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff, Mr. Ward, demands a jury to try all issues triable by jury.

Respectfully submitted,

/s/ Samuel G. Hayward Jr.
Samuel G. Hayward Jr.
ADAMS HAYWARD & WELSH
4036 Preston Highway
Louisville, Kentucky 40213
(502) 366-6456
sghayw@gmail.com

13

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000001 of 000030

[ELECTRONICALLY FILED]

CASE NO. 22-CI-002191                              JEFFERSON CIRCUIT COURT
                                                      JUDGE OLU A. STEVENS
                                                              DIVISION SIX


SURBAN WARD                                                          PLAINTIFF


v.          **DEFENDANT'S ANSWER TO VERIFIED COMPLAINT**


MONRO INC.                                                          DEFENDANT

*     *     *     *     *

Defendant Monro, Inc. (herein "Monro" or "Defendant"), by counsel and pursuant to CR 7 and 8, for its Answer (herein "Answer") to Plaintiff's Verified Complaint (herein "Complaint") states as follows:

### JURISDICTION AND VENUE

1.      Plaintiff, Mr. Ward, is a resident of Louisville, Kentucky and as such, is a resident of Jefferson County, Kentucky.

**ANSWER:       Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 1 of the Complaint and therefore denies the same.**

### THE PARTIES

2.      Defendant, Monro, is incorporated in Kentucky, with its principal place of business in Rochester, New York, and as such is either a resident of Kentucky or New York.

**ANSWER:       In answer to paragraph 2, Defendant states it is incorporated under the laws of the state of New York and is duly registered as a foreign corporation in the Commonwealth of Kentucky.   The allegations contained in paragraph 2 regarding**

Defendant's residency are legal conclusions to which no response is required.  To the extent

a response may be required, Defendant admits it is a resident (as it understands that term)

of New York.

3.      Monro submits itself to the jurisdiction of this Court under KRS 454.210, by

transacting any business in the Commonwealth.  Specifically, Monro operates a facility in

Louisville, Kentucky.

**ANSWER:      The allegations contained in paragraph 3 are legal conclusions to which**

**no response is required.  To the extent a response may be required, Defendant admits it**

**transacts business in the Commonwealth of Kentucky and operates a Tires Now location in**

**Louisville, Kentucky.**

4.      Mr. Ward's cause of action arises out of events that took place in Louisville,

Kentucky.

**ANSWER:      In answer to paragraph 4, Defendant admits the Complaint purports**

**to allege causes of action arising out of events taking place in Louisville, Kentucky, but**

**Defendant specifically denies any violation of law occurred and that Plaintiff is entitled to**

**damages or relief of any nature whatsoever.  To the extent paragraph 4 incorporates other**

**allegations contained in the Complaint, Defendant incorporates its responses and affirmative**

**defenses to all such allegations as if fully set forth herein.  Defendant denies any averments**

**and allegations contained in paragraph 4 not specifically admitted herein.**

5.      Mr. Ward's damages exceed the threshold requirement of five-thousand dollars ($5,000)

and, therefore, this Court has  proper jurisdiction over the matter.

**ANSWER:      The allegations contained in paragraph 5 are legal conclusions to which**

**no response is required.  To the extent a response may be required, Defendant denies**

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000002 of 000030

Plaintiff's damages exceed five thousand dollars ($5,000.00) and specifically denies any violation of law occurred and that Plaintiff is entitled to damages or relief of any nature whatsoever.

6.      Plaintiff's causes of actions arise under the Kentucky Civil Rights Act. as codified in KRS Chapter 344. As such, pursuant to KRS § 344.450 this action must be and is being brought in the Circuit Court in the county in which the alleged action arose.

**ANSWER:      Defendant admits the Complaint purports to allege various claims for relief and damages, including those arising under KCRA and KRS 344 *et seq*.  Defendant specifically denies any violation of the KCRA, or other law occurred, and further denies that Plaintiff is entitled to damages or relief of any nature whatsoever.  In further answer, Defendant admits the Complaint contains purported facts, which if true, would make venue proper in this Court, but specifically denies such allegations.  To the extent paragraph 6 incorporates other allegations contained in the Complaint, Defendant incorporates its responses and affirmative defenses to all such allegations as if fully set forth herein. Defendant denies any averments and allegations contained in paragraph 6 not specifically admitted herein.**

## FACTUAL ALLEGATIONS

1.      Mr. Ward began employment with "Tires Now," a subsidiary company of Defendant, on November 17, 2017 as an Order Picker for tires.

**ANSWER:      In answer to paragraph 1[sic], Defendant admits Plaintiff began employment with Tires Now as a warehouse worker, also referred to as a Picker, on or about November 20, 2017.**

2.      On or about March 2018, Dewayne Liddell ("Mr. Liddell"), Supervisor, called Mr.

3

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000003 of 000030

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000004 of 000030

Ward and other Black colleagues "monkeys" in front of the General Manager Shaun Helvy ("Mr. Helvy").

**ANSWER:**      **Defendant denies it employed anyone named Dewayne Liddell as a supervisor at the Tires Now location in Louisville, Kentucky in or about March 2018 and therefore denies the allegations contained in paragraph 2 of the Complaint.**

3.      Mr.  Liddell and Mr. Helvy are both Caucasian.

**ANSWER:**      **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 3 of the Complaint and therefore denies the same.**

4.      Mr.  Helvy downplayed the racial comment, by saying, in reference to Mr. Liddell, that "He didn't mean it."

**ANSWER:**      **Defendant denies it employed anyone named Dewayne Liddell as a supervisor at the Tires Now location in Louisville, Kentucky in or about March 2018 and therefore denies the allegations related to him contained in paragraph 4 of the Complaint. Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 4 of the Complaint regarding Mr. Helvey and therefore denies the same.**

5.      Mr. Liddell was Mr. Ward's supervisor and Mr. Helvy was the General Manager above Mr. Liddell.

**ANSWER:**      **Defendant denies it employed anyone named Dewayne Liddell as a supervisor at the Tires Now location in Louisville, Kentucky in or about March 2018. Defendant admits Anthony ("Shawn") Helvey was, for a time, the warehouse manager at the Tires Now location in Louisville, Kentucky.**

6.      Mr. Ward asked Mr. Helvy to address the situation with any kind of remedy and

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000005 of 000030

Mr. Helvy promised that he would speak with other management and handle it.

> **ANSWER:** **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 6 of the Complaint and therefore denies the same.**

7.   Mr. Liddell never apologized, and no discipline was handed down by Monro.

> **ANSWER:** **Defendant denies it employed anyone named Dewayne Liddell as a supervisor at the Tires Now location in Louisville, Kentucky in or about March 2018 and therefore lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 7 about what was conveyed by him. Defendant denies the remaining allegations contained in paragraph 7.**

8.   On or about April of 2019, Vincent Barber ("Mr. Barber") and Mr. Liddell get into a heated argument while operating forklifts. Mr. Ward was a witness to this event.

> **ANSWER:** **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 8 of the Complaint and therefore denies the same.**

9.   Mr. Barber is Black.

> **ANSWER:** **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 9 of the Complaint and therefore denies the same.**

10.   Mr. Ward wrote a witness statement of what he witnessed.

> **ANSWER:** **In answer to paragraph 10, Defendant admits it received a written statement from Plaintiff regarding an incident in November 2018 involving Mr. Barber and states said statement speaks for itself and denies any allegations inconsistent therewith.**

11.   Mr. Ward detailed that Mr. Barber never uses a curse word, but eventually yelled back at Mr. Liddell in "frustration."

> **ANSWER:** **In answer to paragraph 11, Defendant states Plaintiff's written**

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000006 of 000030

statement regarding Mr. Barber speaks for itself and denies any allegations inconsistent therewith.

12.     Mr. Ward wrote that Mr. Liddell is the cause of "90% of most issues in the warehouse" and referenced the morning when Mr. Liddell called Mr. Ward and other black employees "monkeys."

**ANSWER:   In answer to paragraph 12, Defendant states Plaintiff's written statement regarding Mr. Barber speaks for itself and denies any allegations inconsistent therewith.**

13.     Even though Mr. Ward stated that Mr. Liddell was the instigator of the incident, Mr. Barber was fired along with Mr. Liddell and Mr. Helvy.

**ANSWER:     In answer to paragraph 13, Defendant states Plaintiff's written statement regarding Mr. Barber speaks for itself and denies any allegations inconsistent therewith.   In further answer, Defendant admits Mr. Barber and Mr. Helvey were terminated in December 2018 and January 2019, respectively, but denies either were terminated for the reasons implied.**

14.     Brian Osborne ("Mr. Osborne") replaced Mr. Helvy as General Manager.

**ANSWER:     Defendant admits Brian Osborne was hired as DC Manager on or about May 20, 2019.**

15.     Mr. Osborne hired friends for jobs which should have been properly advertised to all warehouse employees.

**ANSWER:     Defendant denies the allegations contained in paragraph 15.**

16.     Mr. Ward first reported his concerns of unfair hiring practices and pay discrimination to the EEOC in July of 2019.

**ANSWER:** **Defendant admits Plaintiff filed a charge of discrimination with the EEOC in July 2019.**

17.     Mr. Ward made another report to the EEOC in 2020.

**ANSWER:** **Defendant admits Plaintiff filed a charge of discrimination with the EEOC in December 2020.**

18.     On August 12, 2020, Steve, another Picker, was advised by Mr. Ward to go about picking the order a different way, as Mr. Ward and Steve believed it to be more efficient.

**ANSWER:** **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 18 of the Complaint and therefore denies the same.**

19.     Mr. Ward continued carrying out his own work duties with no deviation.

**ANSWER:** **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 19 of the Complaint and therefore denies the same.**

20.     Steve is White.

**ANSWER:** **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 20 of the Complaint and therefore denies the same.**

21.     Mr. Osborne noticed the variation in work and started yelling at Steve.

**ANSWER:** **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 21 of the Complaint and therefore denies the same.**

22.     Mr. Ward stepped into the conversation to explain his reasoning that would more efficiently pick the order, but Mr. Osborne was so enraged that he condescendingly referred to Mr. Ward as "boss" and yelled at him "Who is the boss Here?"

**ANSWER:** **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 22 of the Complaint and therefore denies the same.**

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000007 of 000030

23.     Mr. Osborne then repeatedly invaded Mr. Ward's personal space and put his finger in his face.

**ANSWER:        Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 23 of the Complaint and therefore denies the same.**

24.     Mr. Ward was extremely disturbed by Mr. Osborne's aggressive and threatening behavior.

**ANSWER:        Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 24 of the Complaint and therefore denies the same.**

25.     Later that same day, Mr. Ward brought up the incident to Lynn Jennings ("Ms. Jennings"), Head of HR, but she refused to comment on the situation, while Mr. Osborne yelled "I would do it again."

**ANSWER:        Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 25 of the Complaint and therefore denies the same.**

26.     Mr. Osborne apologized to Steve for the outburst.

**ANSWER:        Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 26 of the Complaint and therefore denies the same.**

27.     Mr. Ward never received any apology of any kind from Mr. Osborne.

**ANSWER:        Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 27 of the Complaint and therefore denies the same.**

28.     No action was taken by Mr. Osborne or Ms. Jennings to resolve this issue.

**ANSWER:        Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 28 of the Complaint and therefore denies the same.**

29.     Mr. Ward emailed an employee help inbox at Monro on September 24, 2020, to express his

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000008 of 000030

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000009 of 000030

concerns over the ongoing harassment from Mr. Osborne and the escalating incidents, including this one.

**ANSWER:** **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 29 of the Complaint and therefore denies the same.**

30. No response was made.

**ANSWER:** **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 30 of the Complaint and therefore denies the same.**

31. Mr. Osborne warned each new Warehouse Manager, who directly supervised Pickers but was under the General Manager, that Mr. Ward was a troublemaker who "got his co-workers riled up" and was a "union guy."

**ANSWER:** **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 31 of the Complaint and therefore denies the same.**

32. Even though there was no union, Mr. Ward was branded a "union guy" for asserting safety laws and workers' rights when management tried to make the Pickers disobey regulations and policies.

**ANSWER:** **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 32 of the Complaint and therefore denies the same.**

33. Mr. Ward learned of Mr. Osborne's unprofessional comments when, Paul, the Warehouse Manager from February to June of 2021, on or about May 2021 advised Mr. Ward that Mr. Osborne had said these things about him when he was first hired, but that Paul thought that Mr. Ward was a good worker.

**ANSWER:** **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 33 of the Complaint and therefore denies the same.**

34. Mr. Ward was one of only three (3) Black warehouse workers.

9

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000010 of 000030

**ANSWER:        Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 34 of the Complaint and therefore denies the same.**

35.     On July 27. 2021, Mr. Ward was called into a meeting with Mr. Osborne, Greg Carpenter ("Mr. Carpenter"), a Supervisor in HR, and another representative of HR who attended the meeting virtually.

**ANSWER:        Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 35 of the Complaint and therefore denies the same.**

36.     This meeting was to reprimand Mr. Ward for failing to supply a doctor's note to continue his working accommodations.

**ANSWER:        Defendant denies the allegations contained in paragraph 36 of the Complaint.**

37.     Mr. Ward had these accommodations for the previous year because he suffered a foot condition so he could not stand for long periods of time.

**ANSWER:        In answer to paragraph 37, Defendant admits Plaintiff requested accommodations for a foot condition in June 2020.**

38.     Mr. Carpenter reprimanded  Mr. Ward for failing to provide a suitable doctor's note, when the company gave Mr. Ward until August 4th to visit the doctor. Mr. Carpenter and Mr. Osborne were prematurely reprimanding him for a deadline that had not even yet passed.

**ANSWER:        Defendant denies the allegations contained in paragraph 38 of the Complaint.**

39.     Even worse, Mr. Ward had already given the requisite doctor's note to Mr. Osborne on the day he was first told of the task.

**ANSWER:        Defendant lacks sufficient information or knowledge to admit or deny**

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000011 of 000030

the allegations contained in paragraph 39 of the Complaint and therefore denies the same.

40.     Mr. Osborne told Mr. Ward that he would not be able to work until they received the doctor's note, even though Mr. Ward had delivered the note on July 21, 2021, the same day he also went to the doctor.

**ANSWER:        Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 40 of the Complaint and therefore denies the same.**

41.     The doctor Mr. Ward visited was next door to Mr. Ward's work, so it was convenient and efficient to drop it off the Doctor's note directly after visiting the doctor.

**ANSWER:        Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 41 of the Complaint and therefore denies the same.**

42.     Mr. Ward went to the front desk and asked the attendant, Sarah, to make a copy for him, before proceeding to the back office to deliver the note to Mr. Osborne.

**ANSWER:        Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 42 of the Complaint and therefore denies the same.**

43.     The note Mr. Ward provided was almost exactly the same as the first note provided, but Mr. Carpenter stated that the doctor must "lay hands" on Mr. Ward and that the note was insufficient, even though Mr. Ward stated that the doctor did examine him. See Exhibits **1 & 2.**

**ANSWER:        Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 43 of the Complaint and therefore denies the same. In further answer, Defendant states Exhibits 1 and 2 speak for themselves and denies any allegations inconsistent therewith.**

44.     Mr. Ward argued with Mr. Carpenter that no doctor would sign a note without a thorough examination, and even though Mr. Carpenter had no evidence to the contrary, Mr.

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000012 of 000030

Carpenter claimed that the note provided on July 2I, 2021 was insufficient.

  **ANSWER:**  **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 44 of the Complaint and therefore denies the same.**

  45. Mr. Ward had received  two letters from the HR department of Monro asking him to obtain a new doctor's note.

  **ANSWER:**  **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 45 of the Complaint and therefore denies the same.**

  46. Andrew Mitchell ("Mr. Mitchell"), Area Manager, delivered the second letter to Mr. Ward while he was working.

  **ANSWER:**  **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 46 of the Complaint and therefore denies the same.**

  47. Mr. Ward opened and read the letter, then deposited it in the trash can.  Mr. Ward tore the letter into the trash can.

  **ANSWER:**  **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 47 of the Complaint and therefore denies the same.**


  48. Mr. Mitchell falsely told Mr. Carpenter that Mr. Ward had ripped it up "in his face." Mr. Carpenter reprimanded Mr. Ward for ripping up the letter, claiming that it was an act of insubordination.

  **ANSWER:**  **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 48 of the Complaint and therefore denies the same.**

  49. When Mr. Ward ripped up the letter when Mr. Ward was about fifteen to twenty yards away from Mr. Mitchell, as the only trash can was at the other end of the docks.  Mr. Mitchell

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000013 of 000030

delivered the letter to Mr. Ward near the other end of the docks.

**ANSWER:** **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 49 of the Complaint and therefore denies the same.**

50.     August 4, 2021 Mr. Ward was terminated.

**ANSWER:** **Defendant admits the allegations contained in paragraph 50 of the Complaint.**

## COUNT I. DISCRIMINATION BASED ON RACE

51.     Mr. Ward hereby incorporates each and every allegation of paragraphs one (1) through fifty (50), as if fully set forth with particularity herein.

**ANSWER:** **In answer to paragraph 51 of the Complaint, Defendant reaffirms and incorporates herein each and every allegation, matter, averment, denial or affirmative defense made or set forth in its answers to paragraphs 1 through 50 as though fully stated herein.**

52.     Pursuant to KRS § 344.040, it is unlawful for an employer to discriminate against any individual because of the individual's race, color, religion, national origin, sex, or age forty (40) and over.

**ANSWER:** **The allegations contained in paragraph 52 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant states KRS § 344.040 speaks for itself and denies any violation of KRS § 344.040 or other law occurred.**

53.     Monro is an employer pursuant to KRS § 344.030.

**ANSWER:** **The allegations contained in paragraph 53 of the Complaint are legal**

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000014 of 000030

conclusions to which no response is required.  **To the extent a response may be required, Defendant admits that Monro is an employer within the meaning of the Kentucky Civil Rights Act.**

54.    Mr. Ward is an adult African-American male and as such is a member of a protected class.

**ANSWER:    The allegations contained in paragraph 54 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant admits, upon information and belief, that Plaintiff is a member of the African-American race and is male.**

55.    Mr. Ward was qualified for the position that he held, as he had worked there for several years.

**ANSWER:    Defendant admits Plaintiff was qualified (as it understands said term) for the position of warehouse worker and that he held said position since on or about November 20, 2017.**

56.    Mr. Ward was treated differently than similarly situated employees who are white.  Mr. Ward was discriminated against based on his race on numerous occasions.

**ANSWER:    Defendant denies the allegations contained in paragraph 56 of the Complaint.**

57.    Mr. Ward was called a "monkey," an obvious racial slur, by his white supervisor Mr. Liddell in the presence of upper management Mr. Helvy.

**ANSWER:    Defendant denies it employed anyone named Dewayne Liddell as a supervisor at the Tires Now location in Louisville, Kentucky and therefore denies the allegations contained in paragraph 57 of the Complaint.**

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000015 of 000030

58.     Mr. Ward was not paid nor promoted as compared to other White colleagues and filed two separate claims with the EEOC.

**ANSWER:        Defendant admits Plaintiff filed two charges with the EEOC but denies the allegations of wrongful conduct contained in said charges and denies the remaining allegations contained in paragraph 58 of the Complaint.**

59.     Mr. Ward was treated with hostility by Mr. Osborne and Mr. Mitchell, who gave Mr. Ward negative work performance reviews and reprimanded him for ripping up a paper, when Mr. Ward was protecting his privacy and put the paper in the trash can.

**ANSWER:        Defendant denies the allegations contained in paragraph 59 of the Complaint.**

60.     These actions taken by Monro were due to Mr. Ward's race, are in violation of KRS § 344 and establish a *prima facie* case of discrimination against Monro.

**ANSWER:        Defendant denies the allegations contained in paragraph 60 of the Complaint.**

61.     Mr. Ward, having shown that he was treated differently because of his race, *to* his detriment, has suffered, and will continue to suffer, monetary losses based on Monro's actions.

**ANSWER:        Defendant denies the allegations contained in paragraph 61 of the Complaint.**

### COUNT II. DISCRIMINATION BASED ON DISABILITY

62.     Plaintiff hereby incorporates each and every allegation contained in paragraphs (1) through sixty-one (61) as if fully set forth with particularity therein;

**ANSWER:        In answer to paragraph 62 of the Complaint, Defendant reaffirms and incorporates herein each and every allegation, matter, averment, denial or affirmative**

defense made or set forth in its answers to paragraphs 1 through 61 as though fully stated herein.

63.   KRS § 344.040 states that it is unlawful for an employer to discriminate against an individual because they are a person qualified with a disability.

**ANSWER:       The allegations contained in paragraph 63 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant states KRS § 344.040 speaks for itself and denies any violation of KRS § 344.040 or other law occurred.**

64.   Plaintiff was an individual with a disability of foot pain, and he is thus a member of a protected class.

**ANSWER:       The allegations contained in paragraph 64 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 64 of The Complaint and therefore denies the same.**

65.   Under the American Disability Act, an employer must not discriminate on the basis of a workers' disabilities;· the ADA also requires employers to provide reasonable accommodations, including changes to the workplace or job, to .allow employees with disabilities to do their jobs proficiently.

**ANSWER:       The allegations contained in paragraph 65 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant states the Americans with Disabilities Act ("ADA") (erroneously referred to as the "American Disability Act") speaks for itself and denies any violation of the ADA or other law occurred or that Plaintiff has stated a cause of action or requested relief under the ADA.**

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000016 of 000030

66.     The adverse actions taken by Defendants were due to Mr. Ward's disability, and are in violation of KRS § 344.040, and establish a *prima facie* case for disability discrimination against the Defendants.

**ANSWER:       The allegations contained in paragraph 66 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 66.**

67.     Monro was aware of Mr. Ward's disability from June of 2020 and created a Reasonable Accommodation Agreement ("RAA"). **See Exhibit 3.**

**ANSWER:       In answer to paragraph 67, Defendant states Exhibit 3 speaks for itself but denies the copy attached to the Complaint is signed by Plaintiff or Defendant.**

68.     Monro accepted the first doctor's note, but then insisted that the updated doctor's note was insufficient, even though the second doctor's note was obtained from the same doctor and doctor's office.

**ANSWER:       Defendant denies the allegations contained in paragraph 68 of the Complaint.**

69.     Monro, Mr. Carpenter, and Mr. Osborne placed extra burdens on Mr. Ward to update his RAA and reprimanded him in the July 20th meeting for supposedly fraudulently obtaining a doctor's note. Specifically, Mr. Carpenter insisted that the doctor must "lay hands" on Mr. Ward when Mr. Ward admitted that the doctor had in fact completed a full examination.

**ANSWER:       Defendant denies the allegations contained in paragraph 69 of the Complaint.**

70.     Consequently, Mr. Ward was fired.

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000017 of 000030

**ANSWER:**     Defendant denies the allegations contained in paragraph 70 of the Complaint.  In further answer, Defendant states Plaintiff was terminated for failing to work his scheduled shift and falsifying time records.

71.     Mr. Ward, having shown that he was treated differently because of his disability, to his detriment, suffered and will continue to suffer monetary losses based on unemployment, humiliation, embarrassment, stress, and loss of income.

**ANSWER:**     Defendant denies the allegations contained in paragraph 71 of the Complaint.

72.     The actions taken by Defendant were due to Mr. Ward's disability, in violation of KRS § 344.040 and establish a *prima facie* case of disability discrimination against Defendant.

**ANSWER:**     The allegations contained in paragraph 72 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 72.

## COUNT III. RETALIATION

73.     Mr. Ward hereby incorporates each and every allegation of paragraphs one (1) through seventy-two (72), as if fully set forth with particularity herein.

**ANSWER:**     In answer to paragraph 73 of the Complaint, Defendant reaffirms and incorporates herein each and every allegation, matter, averment, denial or affirmative defense made or set forth in its answers to paragraphs 1 through 72 as though fully stated herein.

74.     Pursuant to the KCRA, as codified in KRS Chapter 344, it is unlawful for an employer and its employees, agents, and/or representatives to retaliate against an individual because she has opposed a practice declared unlawful by KRS Chapter 344.

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000019 of 000030

**ANSWER:**     The allegations contained in paragraph 74 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant states KRS Chapter 344 speaks for itself and denies any violation KRS Chapter 344 or other law occurred.

75.     KRS § 344.280 (1) makes it unlawful for an employer or person to retaliate or discriminate in any manner against a person because she has opposed a practice declared unlawful by this chapter, or because she has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter: A claim for unlawful  retaliation requires the plaintiff to first establish a *prima facie* case of retaliation which consists of showing that: (1) she engaged in an activity protected by (the KCRA); (2) that exercise of her civil rights was known by the Defendant; (3) that, thereafter, the Defendant took an employment  action adverse to the Plaintiff; and (4) there was a causal connection between the activity engaged in the Defendant  employer's act. *Brooks v. Lexington-Fayette Urban Cty. Housing Authority,* 132 S.W.3d 790,803 (Ky. 2004).

**ANSWER:**     The allegations contained in paragraph 75 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant states **KRS § 344.280** and the case law cited speak for themselves and denies any violation of **KRS § 344.280** or other law occurred.

76.     KRS § 344.030 defines "employer" for the purposes of KRS § 344.280 as "a person who has eight (8) or more employees within the state in each of twenty (20) or more calendar weeks" during either the same year as alleged unlawful discrimination or during the preceding year.  Defendant, Monro is an employer pursuant to this statute.

**ANSWER:**     The allegations contained in paragraph 76 of the Complaint are legal

19

**conclusions to which no response is required. To the extent a response may be required, Defendant admits that Monro is an employer within the meaning of the Kentucky Civil Rights Act.**

77. <u>KRS § 344.040</u> protects an employee from discrimination because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker.

**ANSWER:    The allegations contained in paragraph 77 of the Complaint are legal conclusions to which no response is required. To the extent a response may be required, Defendant states <u>KRS § 344.040</u> speaks for itself and denies any violation of <u>KRS § 344.040 or</u> other law occurred.**

78. Mr. Ward is a member of a class protected by <u>KRS § 344</u> as an African-American man. As such, he was. engaged in a protected activity when he filed his disability accommodation and doctor's note with Defendant.

**ANSWER:    The allegations contained in paragraph 78 of the Complaint are legal conclusions to which no response is required. To the extent a response may be required, Defendant admits, upon information and belief, that Plaintiff is an African-American male, but denies the remaining allegations contained in paragraph 78 of the Complaint.**

79. Defendant took materially adverse employment actions against Mr. Ward by not promoting nor paying Mr. Ward equally as newer hires, nor treating Mr. Ward fairly.

**ANSWER:    Defendant denies the allegations contained in paragraph 79 of the Complaint.**

80. After Mr. Ward complained to the employee help inbox and reported to Ms. Jennings, in the presence of Mr. Osborne, the harassment only increased.

**ANSWER:**      **Defendant denies the allegations contained in paragraph 80 of the Complaint.**

81.     Monro never addressed the racial slur used against Mr. Ward by Mr. Liddel, even though Mr. Ward notified the employee inbox Er7u@monro.com and Ms. Jennings.

**ANSWER:**      **Defendant denies the allegations contained in paragraph 81 of the Complaint.**

82.     Mr. Osborne called him "Boss" and put his finger in his face and when Mr. Ward again brought this to the attention of Monro, Mr. Osborne stated that he would do it again, and no further actions or steps were taken by Monro.

**ANSWER:**      **Defendant denies the allegations contained in paragraph 82 of the Complaint.**

83.     There is a causal connection between Mr. Ward losing his job and filing disability accommodation.

**ANSWER:**      **The allegations contained in paragraph 83 of the Complaint are legal conclusions to which no response is required. To the extent a response may be required, Defendant denies the allegations contained in paragraph 83 of the Complaint.**

84.     Defendants' conduct violates KRS § 344.280, and Defendants should be held liable.

**ANSWER:**      **The allegations contained in paragraph 84 of the Complaint are legal conclusions to which no response is required. To the extent a response may be required, Defendant denies the allegations contained in paragraph 84 of the Complaint.**

## COUNT IV. PROMISSORY ESTOPPEL

85.     Mr. Ward hereby incorporates each and every allegation of paragraphs one (1) through eighty-four (84), as if fully set forth with particularity herein.

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000021 of 000030

**ANSWER:**      In answer to paragraph 85 of the Complaint, Defendant reaffirms and incorporates herein each and every allegation, matter, averment, denial or affirmative defense made or set forth in its answers to paragraphs 1 through 84 as though fully stated herein.

86.      Under Kentucky law, the elements of promissory estoppel are: (1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." *Res-Care, Inc. v. Omega Healthcare Investors, Inc.,* 187 F.Supp.2d 714, 718 (W.D. Ky. 2001).

**ANSWER:**      The allegations contained in paragraph 86 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant states the case law cited speaks for itself and denies any violation of law occurred.

87.      Defendant policy and management encourages employees to address their concerns with management so that they may be resolved efficiently and quickly.

**ANSWER:**      In answer to paragraph 87 of the Complaint, Defendant states its policies speak for themselves and denies any allegations inconsistent therewith. In further answer, Defendant admits it encourages its employees to address concerns with management so that they may be resolved efficiently and quickly.

88.      Monro can reasonably expect their own policies to induce action on the part of their employees. Especially when their policies read like a call to action.

**ANSWER:**      The allegations contained in paragraph 88 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant states paragraph 88 is vague, ambiguous, and contains incomplete sentences such

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000022 of 000030

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000023 of 000030

that **Defendant cannot reasonably respond; therefore, Defendant denies the allegations contained in paragraph 88.**

89.     Mr. Ward was induced into an action when he reported the incident to Ms. Jennings, HR, and Mr. Helvy.  Specifically, he was induced into an action with the specific policy of equality and safety.

**ANSWER:       Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 89 of the Complaint and therefore denies the same.**

90.     Mr. Ward reported the racial slurs and physical intimidation used by Mr. Osborne to management, but Monro failed to address or remedy the situation at all.

**ANSWER:       Defendant denies the allegations contained in paragraph 90 of the Complaint.**

91.     Mr. Ward has faced harm as a result of his reliance, and injustice can only be avoided by the enforcement of Defendant's promise.

**ANSWER:       Defendant denies the allegations contained in paragraph 91 of the Complaint.**

## COUNT V. HOSTILE WORK ENVIRONMENT

92.     Mr. Ward hereby incorporates each and every allegation of paragraphs one (l) through ninety-one (91), as if fully set forth with particularity herein.

**ANSWER:       In answer to paragraph 92 of the Complaint, Defendant reaffirms and incorporates herein each and every allegation, matter, averment, denial or affirmative defense made or set forth in its answers to paragraphs 1 through 91 as though fully stated herein.**

93.     In Kentucky, to establish a *prima facie* case of hostile work environment, Plaintiff

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000024 of 000030

must show that (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment regarding their protected class; (3) the harassment was based on the protected class; (4) the harassment had the effect of unreasonably interfering with his work performance by creating intimidating, hostile, or offensive work environment; and (5) the existence of respondent superior liability.

**ANSWER:**      **The allegations contained in paragraph 93 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant states the case law cited speaks for itself and denies any violation of law occurred.**

94.      Mr. Ward, as an African-American male with a disability. is a member of a protected class.

**ANSWER:**      **The allegations contained in paragraph 94 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant admits, upon information and belief, that Plaintiff is an African-American male, but lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 94 regarding Plaintiff's alleged disability.**

95.      Mr. Ward was subjected to hostility by Mr. Osborne putting his finger aggressively in his face and when Mr. Ward brought this up to another manager, Mr. Osborne faced no consequences and even doubled-down that he would do it again, as Mr. Osborne saw nothing wrong nor unprofessional about how he had conducted himself.

**ANSWER:**      **The allegations contained in paragraph 95 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 95.**

96.      Mr. Ward was subjected to unwelcomed harassment on the basis of his race. Similarly situated Caucasian employees were not subjected to the same harassment and

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000025 of 000030

antics.

**ANSWER:**      **The allegations contained in paragraph 96 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 96.**

97.      Steve, the other White picker, was  given an  apology by Mr. Osborne, while Mr. Ward never received an  apology for  Mr. Osborne shaking his finger in bis face and speaking so rudely to him, especially in front of other employees.

**ANSWER:**      **Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 97 of the Complaint and therefore denies the same.**

98.      The harassment unreasonable interfered with Mr. Ward's work performance by creating and/or condoning an  intimidating,  hostile,  or  offensive  work environment.

**ANSWER:**      **The allegations contained in paragraph 98 of the Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 98.**

99.      Respondent superior liability theorizes that when one acts through the agency of another, he is himself acting and thus responsible for the acts of his agent. *Brooks* v. *Grams,* 289 S.W.3d 208,211 (Ky. Ct App. 2008). "When an agent fails in any duty which he owes a third party or the public generally, the principal is responsible for the future." *Smith v. Smith,* 333 S.W.2d 503, 504 (Ky. 1960). Under these circumstances, an  employer is strictly liable for damages resulting from the tortious acts of his employees. *Patterson v. Blair,* 172 S.W.3d 361,364 (Ky. 2005).

**ANSWER:**      **The allegations contained in paragraph 99 of the Complaint are legal**

conclusions to which no response is required.  **To the extent a response may be required, Defendant states the case law cited speaks for itself and denies any allegations of wrongdoing contained in paragraph 99.**

100.  In the current case, both Defendants have acted in a tortious manner. Monro is liable for their own actions and through the theory of respondent superior liability, Monro is liable for Mr. Osborne's actions and Mr. Carpenter's actions.

**ANSWER:**      **Defendant states paragraph 100 is vague and ambiguous such that Defendant cannot reasonably respond as it refers to "both Defendants" despite there being only one named Defendant.  To the extent it purports to allege Monro and/or its agents acted tortiously, all such allegations contained in paragraph 100 are denied.**

## PRAYER FOR RELIEF

Plaintiff, Mr. Ward, hereby incorporates all preceding paragraphs as if fully set forth with particularity herein.

**WHEREFORE**, Mr. Ward, prays this Court:

1.      Declare Defendants' conduct is in violation of Mr. Ward's rights;

2.      Award Mr. Ward compensatory damages in such amount as shall be proven at trial for his economic, personal and other losses;

3.      Award Mr. Ward damages in an amount to be proven at trial for humiliation, embarrassment, apprehension about his future, and emotional stress, which the Defendants caused Mr. Ward by their illegal, discriminatory, and wrongful acts towards him;

4.      Award Mr. Ward costs, interest, and attorneys' fees pursuant to KRS § 344; and

5.      Grant him such further relief as this Court may deem just and proper.

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000026 of 000030

**ANSWER:**     Defendant denies Plaintiff is entitled to any relief or judgment requested in the WHEREFORE paragraph, including subparagraphs (1) through (5).

### JURY DEMAND

Plaintiff, Mr. Ward, demands a jury to try all issues triable by jury.

**ANSWER:**     **Defendant requests a jury trial on all issues so triable.**

### GENERAL DENIAL

To the extent not expressly admitted above, Defendant denies every allegation, count, claim, and prayer in the Complaint.

### AFFIRMATIVE AND OTHER DEFENSES

In addition to the defenses and denials set forth above, Defendant asserts the following affirmative and other defenses. In pleading these defenses, Defendant does not admit it bears the burden of proof, production, or persuasion on such defenses. Defendant reserves the right to raise any and all counterclaims and additional defenses, including, but not limited to, affirmative defenses that may become apparent at any time during the course of this litigation.

1.     The Complaint fails to allege, in whole or in part, claims for which relief may be granted under applicable law.

2.     Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation to the extent any of the alleged discriminatory conduct (which is denied) occurred more than five years prior to the filing of this action.

3.     Any actions taken by Defendant with respect to Plaintiff's employment were based upon good faith, legitimate, non-discriminatory, non-retaliatory reasons, and not in violation of the Kentucky Civil Rights Act or any other statute, law, rule, regulation or ordinance prohibiting

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000027 of 000030

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000028 of 000030

discrimination based on race or any other protected category, and were carried out in a good faith exercise of Monro's reasonable business judgment.

4.      Monro acted at all times in good faith and took all actions based upon legitimate business necessity.

5.      Plaintiff is not entitled to recover punitive damages because Defendant did not make any decision, nor take any action, with an evil motive or intent, nor did it demonstrate any reckless indifference or conscience disregard for Plaintiff's protected rights under state law.

6.      Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate any damages he allegedly incurred.

7.      To the extent the Plaintiff recovers damages based on his claims, the existence of which Defendant specifically denies, Defendant is entitled to a setoff or credit for amounts the Plaintiff earned or received, or could have earned or received through reasonable efforts on his part.

8.      Any employment actions taken toward the Plaintiff were taken for reasonable factors other than race or disability.

9.      Plaintiff's claims are barred, in whole or in part, because he failed to engage in the interactive dialogue and/or to provide documentation so that his request for accommodation could be reviewed.

10.     To the extent Plaintiff suffered any damages claimed, which Defendant expressly denies, Plaintiff's own actions contributed to any such damages, whether in whole or in part.

11.     Plaintiff's claims are barred to the extent there was no causal connection between the events alleged in the Verified Complaint and any damages Plaintiff allegedly suffered.

12.     Any causal link between Plaintiff's alleged protected activities, which Defendant

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000029 of 000030

expressly denies, and any actions Defendant took regarding Plaintiff's employment were broken by intervening events that, by themselves, were enough to independently cause disciplinary actions regarding Plaintiff.

13.     To the extent Plaintiff has suffered any compensatory or emotional distress damages, which Defendant expressly denies, there are intervening and other causes for such damages other than any actions taken by Defendant.

14.     Defendants would have made the same employment decisions with respect to Plaintiff absent any alleged unlawful or impermissible considerations, the existence of which Defendant specifically denies.

15.     Defendant exercised reasonable care to prevent and correct any discriminatory and/or harassing behavior, the existence of which is specifically denied.  Monro, among other things, has a written policy in place regarding prohibited discriminatory behaviors that provides multiple avenues to complain.  The Plaintiff failed to take advantage of Monro's preventative or corrective opportunities to him.

16.     Plaintiff's claims are barred, in whole or in part by the doctrines of release, waiver, consent, estoppel, laches, and/or unclean hands.

17.     Defendants reserve the right to assert additional defenses as they become known to them through discovery and/or investigation of this matter.

WHEREFORE, Defendants request the following relief:

(a)  Dismissal of the Complaint in its entirety and with prejudice;

(b)  Their costs and attorneys' fees incurred to the fullest extent allowed by law; and

(c)  Any and all other relief to which they are entitled.

Respectfully submitted,

*/s/ Blaine R. Blood*
Gregory L. Taylor
Blaine R. Blood
EDDINS · DOMINE LAW GROUP, PLLC
3950 Westport Road
Louisville, Kentucky 40207
Phone: (502) 893-2350
Email: gtaylor@louisvillelawyers.com
Email: bblood@louisvillelawyers.com
*Counsel for Monro, Inc.*

## CERTIFICATE OF SERVICE

I certify that a copy of Defendant's Answer to Plaintiff's Verified Complaint was served

by electronic mail on May 31, 2022, addressed to the following:

Samuel G. Hayward Jr.
ADAMS HAYWARD & WELSH
4035 Preston Highway
Louisville, KY 40213
(502) 366-6456
sghayw@gmail.com
*Counsel for Plaintiff*

*/s/ Blaine R. Blood*
EDDINS · DOMINE LAW GROUP, PLLC
*Counsel for Monro, Inc.*

A295D4F2-8A44-4D2F-AFED-916445E8A211 : 000030 of 000030